No. 25-1404

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

---

**SANDY HARRIS, JR.,**

Plaintiff-Appellant,

v.

**NATIONAL GRID USA SERVICE COMPANY, INC.**,

Defendant-Appellee.

---

Appeal from the United States District Court
for the District of Massachusetts
Case No. 1:22-CV-11628-AK

---

**BRIEF OF DEFENDANT-APPELLEE
NATIONAL GRID USA SERVICE COMPANY, INC.**

---

Lisa Stephanian Burton, Esq.
Laurielle M. Howe, Esq.
OGLETREE, DEAKINS, NASH
SMOAK & STEWART, P.C.
One Boston Place, Suite 3500
Boston, MA 02108
Telephone: 617.994.5700

*Attorneys for Defendant-Appellee*

## RULE 26 DISCLOSURE STATEMENT

All outstanding shares of common stock of Defendant National Grid USA Service Company, Inc. (National Grid) are owned by National Grid USA. All outstanding shares of common stock of National Grid USA are owned by National Grid North America Inc. All outstanding shares of common stock of National Grid North America Inc. are owned by National Grid (US) Partner 1 Limited. All outstanding ordinary shares of National Grid (US) Partner 1 Limited are owned by National Grid (US) Investments 4 Limited. All outstanding ordinary shares of National Grid (US) Investments 4 Limited are owned by National Grid (US) Holdings Limited. All outstanding ordinary shares of National Grid (US) Holdings Limited are owned by National Grid plc. National Grid plc is a public limited company organized under the laws of England and Wales, with ordinary shares listed on the London Stock Exchange, and American Depositary Shares listed on the New York Stock Exchange. No publicly held corporation directly owns more than 10% of National Grid plc's outstanding ordinary shares.

i

## TABLE OF CONTENTS

RULE 26 DISCLOSURE STATEMENT.................................................i

TABLE OF AUTHORITIES.................................................iv

REASONS WHY ORAL ARGUMENT NEED NOT BE HEARD............1

JURISDICTIONAL STATEMENT .......................................2

STATEMENT OF THE ISSUES.................................................3

STATEMENT OF THE CASE ................................................5

Plaintiff fails to return to conduct on-site training in his territory......5

National Grid decides the consequences of Plaintiff's failure to report..................................................7

Plaintiff then requests accommodation for "pre-existing conditions"...9

Plaintiff fails to support his need for accommodation.........................9

Plaintiff mentions the FMLA.............................................11

National Grid implements its decision ...............................................11

about the consequences of Plaintiff's failure to report. ......................11

Proceedings below .......................................................11

SUMMARY OF THE ARGUMENT .......................................13

ARGUMENT ................................................................14

Standard of Review ..............................................................14

Summary judgment framework.........................................14

I.  The state law retaliation claim. ...............................16

II. The FMLA retaliation claim. ................................................29

CONCLUSION ...............................................................................33

CERTIFICATE OF COMPLIANCE.........................................34

CERTIFICATE OF SERVICE..................................................35

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Carrington v. City of Des Moines,*
481 F.3d 1046 (8th Cir. 2007)............................................. 19, 22, 24, 32

*Cherkaoui v. City of Quincy,*
877 F.3d 14 (1st Cir. 2017) ............................................................. 14

*Clark v. Chapman,*
2022 WL 19833097 (6th Cir. 2022)................................. 19, 22, 24, 32

*Colon v. Tracey,*
717 F.3d 43 (1st Cir. 2013) ................................................ 16, 17, 30, 31

*Germanowski v. Harris,*
854 F.3d 68 (1st Cir. 2017) .................................................. 19, 22, 32

*Ing v. Tufts Univ.,*
81 F.4th 77 (1st Cir. 2023)................................................................15

*Jones v. Nationwide Life Ins. Co.,*
696 F.3d 78 (1st Cir. 2012) ..............................................................19

*Leitgen v. Franciscan Skemp Healthcare, Inc.,*
630 F.3d 668 (7th Cir. 2011)............................................. 19, 22, 24, 32

*McKennon v. Nashville Banner Pub. Co.,*
513 U.S. 352 (1995)...................................................................... 18, 31

*Miceli v. Jetblue Airways Corp.,*
914 F.3d 73 (1st Cir. 2019) .............................................. 19, 22, 24, 32

*Pearson v. Mass. Bay Transp. Auth.,*
723 F.3d 36 (1st Cir. 2013) ........................................................ *passim*

*Reeves v. Sanderson Plumbing Prod., Inc.,*
530 U.S. 133 (2000).......................................................................15

*Rodgers v. U.S. Bank, N.A.*,
  417 F.3d 845 (8th Cir. 2005)..............................................................27

*Soileau v. Guilford of Maine, Inc.*,
  105 F.3d 12 (1st Cir. 1997) ...................................................... *passim*

*Stewart v. Ind. Sch. Dist. No. 196*,
  481 F.3d 1034 (8th Cir. 2007)...................................................... 18, 31

*Stoute v. Cone*,
  2022 WL 17228794 (1st Cir. 2022)................................. 16, 17, 30, 31

*Tejada-Batista v. Morales*,
  424 F.3d 97 (1st Cir. 2005) ............................................................... 4

*Verdrager v. Mintz, Levin, Cohn, Ferris, Glovsky & Popeo,
  P.C.*,
  50 N.E.3d 778 (Mass. 2016)..............................................................15

*Villeneuve v. Avon Prods., Inc.*,
  919 F.3d 40 (1st Cir. 2019) ..............................................................14

## REASONS WHY ORAL ARGUMENT NEED NOT BE HEARD

The District Court granted summary judgment regarding Plaintiff's retaliation claims because he cannot show any causal connection between his purported protected activity and his termination. Because the issues are straightforward, the appeal may be decided without need of oral argument.

## JURISDICTIONAL STATEMENT

The District Court had subject matter jurisdiction over Plaintiff's federal claims (FMLA retaliation and interference – Counts IV and V) pursuant to 28 U.S.C. § 1331 and over his state claims (disability discrimination, race discrimination, and retaliation—Counts I-III) pursuant to 28 U.S.C. § 1367.

The District Court entered summary judgment against Plaintiff regarding all claims. The District Court's order and judgment, entered March 26, 2025, thus constitutes a final judgment disposing of all parties' claims.

Plaintiff filed his notice of appeal on April 23, 2025.

Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

I.    Whether summary judgment regarding Plaintiff's disability retaliation claim should be affirmed, when:

A.    Plaintiff failed to show any causal link between his purported protected activity and his termination, and the undisputed evidence instead shows National Grid determined the consequence of Plaintiff's misconduct before his purported protected activity;

B.    Plaintiff thus failed to establish even a *prima facie* case of disability retaliation; and, even if he could establish a *prima facie* case,

C.    Plaintiff failed to show that National Grid's explanation for his termination—his failure to return to his service area after the conclusion of his scheduled vacation—is pretextual; and

D.    Plaintiff waived his appeal of the decision by failing to address the District Court's explanation for its decision.

II.    Whether summary judgment regarding Plaintiff's FMLA retaliation claim should be affirmed, when:

A.    Plaintiff failed to show any causal link between his purported protected activity and his termination, and the undisputed evidence

3

instead shows National Grid determined the consequence of Plaintiff's misconduct before his purported protected activity;

B.      Plaintiff thus failed to establish even a *prima facie* case of FMLA retaliation; and, even if he could establish a *prima facie* case,

C.      Plaintiff failed to show that National Grid's explanation for his termination—his failure to return to his service area after the conclusion of his scheduled vacation—is a pretext for retaliation; and

D.      Plaintiff waived his appeal of the decision by failing to address the District Court's explanation for its decision.[1]

---

[1] Plaintiff presents argument only regarding his disability and FMLA retaliation claims, and he thus waives any appeal regarding his other claims. *Tejada-Batista v. Morales*, 424 F.3d 97, 103 (1st Cir. 2005); *see also* P. Br. at 59 (requesting relief only regarding the retaliation claims).

## STATEMENT OF THE CASE

Plaintiff fails to return to conduct on-site training in his territory.

As a Change Analyst at National Grid, Plaintiff had responsibility for rolling out new gas-leak technology to field workers. (A. 138-40, 172, 195-96, 175-76, 198-99). Plaintiff's job required frequent travel throughout National Grid's service territory to conduct in-person training. (A.62, 70, 199).

National Grid expected Plaintiff to work in-person at a training scheduled to be held in Rhode Island on July 28 and 29, 2020, which Plaintiff had helped plan. (A. 64-65, 72-73, 126, 152-56, 253, 255-79).

Plaintiff, however, had scheduled a vacation, involving driving to Ohio and then California, with a return-to-work date of July 27, 2020. (A. 125).

On July 22, 2020, Dombroski called Plaintiff to confirm he was set to attend the Rhode Island training later that month. (A. 72-73). Dombroski also reminded Plaintiff he would be required to follow COVID-19 protocols. (A. 72-73). In response, Plaintiff stated that he was uncomfortable attending the onsite training and asked about requirements for quarantine upon his return from vacation. (A. 73). At

this time, Plaintiff did not say anything about having any medical conditions requiring accommodation, nor did he request any accommodation to avoid on-site training based on such conditions. (*Id.*; A. 315, 1400). Dombroski heard nothing else from Plaintiff until after his scheduled vacation had ended. (A. 73).

On July 28, 2020—the date Plaintiff was supposed to be traveling to Rhode Island—Dombroski forwarded to him an update of company information regarding COVID-19, with a cover email referencing his planned travel to Rhode Island for the on-site training. (A. 73, 281-84).

In response, at 4:21 p.m. on July 28, 2020, Plaintiff emailed Dombroski that: he had not yet returned to Massachusetts from his vacation to California; he planned to work only remotely; and he was concerned about COVID-19. (A. 294-95). Plaintiff did not say anything about having any medical conditions requiring accommodation, nor did he request any accommodation to avoid on-site training based on any such conditions. (*Id.*; A. 315, 1400).

In his email, Plaintiff also referenced a National Grid corporate communication outlining the possibility of employees working remotely, out of the service area, if certain criteria were met. (A. 294-95). One

criterion for such remote work was prior permission from the employee's direct manager. (A. 295). Plaintiff had not previously requested to work remotely outside of his Massachusetts, New York and Rhode Island service area, and he had no such prior permission. (*Id.*; A. 73, 302).

National Grid decides the consequences of Plaintiff's failure to report.

Dombroski forwarded Plaintiff's response to other managers, including Vice President for Business Readiness Reihaneh Irani-Famili, Director, Change Management Jesse Harvey, and Director and UK Senior Business Partner, Human Resources Judith Dunn. (A. 55, 57, 302-03). Dombroski made clear to them that Plaintiff had not previously requested to work remotely outside his service territory. (A. 302-03).

Irani-Famili, with Dunn's input, then concluded that Plaintiff's employment with National Grid would be terminated unless he reported to work in Massachusetts immediately. (A. 58-59, 717, 995). Irani-Famili considered Plaintiff's July 2020 conduct to reflect the latest incident in a pattern she had observed. (A. 56-58). For example, Irani-Famili, Dunn, Harvey, and Dombroski all had concerns, dating from late 2019 and early 2020, about Plaintiff's accountability for his expenses, and Irani-Famili and Dunn considered Plaintiff to be disrespectful in his interactions with

7

managers. (A. 56-57, 63-64, 71-72, 77-78). Plaintiff believes that National

Grid's alleged retaliation against him began with its reactions about his

expenses in 2019 and early 2020. (A. 72, 118). For example, Plaintiff

claimed that National Grid was retaliating against him over his expense

issues after they were addressed in his April 2020 performance review.

(A. 72, 118, 239-41).

On July 30, 2020, Dunn notified Plaintiff of National Grid's

decision.

> Dear Sandy:
>
> Please be advised that you have violated the terms and conditions of your employment by not timely returning to our service territory to perform the work you were hired to do. The essential functions of your position within the Transformation Office required you to provide on-site services within our three-state geographic territory, NY, MA, and RI. You have violated company policy by not seeking management approval to work out of state at the completion of your vacation.
>
> Please note that your refusal to report to work in Massachusetts, your place of employment, in defiance of managerial instructions, will be deemed a resignation effective July 30, 2020.
>
> If you would prefer . . ., we could offer you a severance payment of nine (9) weeks of salary in exchange for a signed release and waiver agreement. If you wish to consider the severance payment, please respond back to me directly.

(A. 311-12).

Plaintiff, who was still in California, had failed to attend the Rhode Island training of July 28 and 29, 2020, and did not report to Massachusetts on July 30, 2020. (A. 400).

Plaintiff then requests accommodation for "pre-existing conditions".

In response, Plaintiff sent Dunn an email later on July 30, 2020 notifying National Grid—for the first time—that he had "pre-existing conditions that I believe puts me at a higher risk for COVID" and requesting reasonable accommodation "due to COVID." (A. 315-16, 1400).[2]

Plaintiff fails to support his need for accommodation.

Dunn and Plaintiff then exchanged more emails over the next several days. Dunn explained that Plaintiff's job required on-site work, and that he had violated: the terms of his employment "by not timely returning to our service territory to perform the work you were hired to do;" and company policy "by not seeking management approval to work out of state at the completion of your vacation." (A. 314-15). Plaintiff

---

[2] Until then, National Grid had only Plaintiff's November 2017 explicit and emphatic typed and signed statement, "NO I DON'T HAVE A DISABILITY," and his signed form disclaiming any medical symptoms or conditions other than needing glasses.  (A. 100-07, 131, 134-35).

accused National Grid of a pattern of false accusations against him, and of "maliciously looking to part ways with me," stated that there was no on-site requirement "outlined in my terms of employment," and expressed interest in severance. (A. 314).

In response to Plaintiff's request for accommodation for a pre-existing condition, Dunn referred Plaintiff to National Grid's medical department. (A. 319, 348). National Grid allowed Plaintiff to continue working, remotely while he considered severance and pursued his accommodation request. (A. 65-66, 320).

Plaintiff did, on August 11, 2020, provide National Grid's medical department with a doctor's note dated August 7, 2020. The information in the note consists of the following: "To Whom It May Concern: It is my medical opinion that Sandy Harris would benefit from an accommodation to work remotely during the COVID pandemic." (A. 373-74, 377).

National Grid's medical department notified Plaintiff that this documentation was inadequate, and explained what information was required. (A. 376, 382-83). The same communication notified Plaintiff that the required documentation should be submitted by August 18, 2020. (A. 382-83). Plaintiff admits both that he received the medical

department's communication and that he failed to provide the required additional information. (A. 127-29).

## Plaintiff mentions the FMLA

On August 6, 2020, Plaintiff asked Dunn about FMLA leave "[a]s I need to work remotely for my own personal health reasons, but also due to the health reasons impacting to my elderly parents." (A. 319). The same day, Plaintiff initiated an FMLA request regarding his mother's care, but the third-party administrator's records show he withdrew it the next day. (A. 84, 323, 359-60, 362-64). Plaintiff never submitted an FMLA application regarding his own health. (A. 123-24, 323).

## National Grid implements its decision about the consequences of Plaintiff's failure to report.

On August 19, 2020, Dunn sent Plaintiff a letter explaining that his employment had been terminated because he violated the terms of his employment and company policy. (A. 395-96).

## Proceedings below

On July 1, 2022, Plaintiff filed a five-count Complaint in Massachusetts state court, which National Grid timely removed to the United States District Court for the District of Massachusetts. (A. 2, 198-209). The Complaint asserts claims of: handicap discrimination (Count

11

I), race discrimination (Count II); retaliation (Count III); FMLA retaliation (Count IV) and FMLA interference (Count V). (*Id*.).

On August 5, 2024, National Grid filed its motion for summary judgment on all counts and supporting memorandum. (A. 11-14, 38-54). Plaintiff filed an opposing memorandum on August 26, 2024, and National Grid filed a reply on September 9, 2024. (A. 397-416, 1368-79). After a hearing, the District Court granted summary judgment on all counts on March 26, 2025. (A. 1474-1527). The District Court granted summary judgment regarding the retaliation claims—Counts III and IV—because it found no evidence showing a causal connection between the purported protected activity and Plaintiff's termination. To the contrary, the District Court found: "National Grid informed Harris it would consider him to have abandoned his job if he did not return to the service area *prior to* his reasonable accommodation inquiry or request for leave under the FMLA." (A. 1522) (emphasis supplied).

This appeal regarding Counts III and IV followed.

12

## SUMMARY OF THE ARGUMENT

National Grid notified Plaintiff that the consequence of his failing to return to work in his service area, after his vacation, would be the termination of his employment. Only after receiving notification of that decision did Plaintiff inform National Grid that he had "pre-existing conditions," that his "pre-existing conditions" necessitated an accommodation of remote work, and that he would request FMLA leave.

National Grid moved for summary judgment because Plaintiff cannot demonstrate that his purported protected activity caused his termination. To the contrary, the evidence demonstrates that National Grid could not have been motivated by any protected activity because there had yet to be any protected activity when National Grid decided the consequences of Plaintiff's conduct and communicated those consequences to Plaintiff.

The District Court granted summary judgment on those causation grounds. This Court should affirm. Plaintiff has waived his challenge to the District Court's decision by failing to address the District Court's grounds. Even absent waiver, Plaintiff cannot demonstrate causation.

13

## ARGUMENT

### Standard of Review

This Court reviews summary judgment *de novo*, applying the same standard as the district court. *Cherkaoui v. City of Quincy*, 877 F.3d 14, 23 (1st Cir. 2017). "Summary judgment is proper when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* (internal punctuation and citation omitted). A dispute is "genuine" only if the evidence is such that it could cause a reasonable jury to return a verdict for the non-moving party. *Id.* at 23-24. A fact is "material" only if its resolution "has the potential to affect the outcome of the suit under the applicable law." *Id.* The movant cannot avoid summary judgment based on "bald assertions, empty conclusions, rank conjecture, or vitriolic invective." *Id.* at 23. This Court may affirm summary judgment for any reason supported by the record. *Villeneuve v. Avon Prods., Inc.*, 919 F.3d 40, 51 (1st Cir. 2019).

### Summary judgment framework.

Plaintiff's retaliation claims are analyzed at summary judgment pursuant to the *McDonnell Douglas* burden-shifting framework. First, Plaintiff must establish a *prima facie* case of retaliation by presenting

14

evidence showing each of the following three elements: (1) he engaged in protected activity; (2) he suffered an adverse action; and (3) he suffered the adverse action because of the protected activity. *Ing v. Tufts Univ.*, 81 F.4th 77, 84 (1st Cir. 2023). If, and only if, Plaintiff establishes a *prima facie* case, the burden of production shifts to National Grid to articulate a legitimate, non-retaliatory reason for its adverse action decision. *Id.* at 83. Once it does, the burden of persuasion shifts back to Plaintiff to show that the explanation is a mere pretext.[3] The standard of causation for Plaintiff's claims "is that protected activity was a but-for cause of the alleged adverse action." *Id.* at 84 n.5. (internal punctuation and citation omitted).

---

[3] For federal claims, the standard requires plaintiff to show that the employer's explanation is a pretext for retaliation. *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 146-47 (2000). In some cases, evidence establishing the *prima facie* elements, combined with evidence the stated reason is false, suffices to establish that a reasonable jury could conclude that protected activity is the but-for cause of the adverse action. In other cases, additional evidence might be required for the plaintiff to reach a jury. *Id.* For Massachusetts claims, courts describe the requirement as showing pretext (not pretext for retaliation), reasoning that the *prima face* case plus demonstration of falsity is enough to warrant (though not require) a jury's inference of but-for causation. *See Verdrager v. Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C.*, 50 N.E.3d 778, 794 (Mass. 2016).

I.    <u>The state law retaliation claim</u>.

Summary judgment regarding the state law retaliation claim should be affirmed. First, Plaintiff has waived his right to challenge summary judgment by failing to address the District Court's grounds for its decision—*i.e*, how the sequence of events precludes him from showing causation. Second, even absent waiver, Plaintiff's claim fails because he has no evidence demonstrating any causal connection between his purported protected activity—request for an accommodation based on disability—and his termination.

A.    <u>Plaintiff has waived right to challenge summary judgment.</u>

An appellant who fails to address the grounds of the district court's decision waives the right to challenge that decision. *Stoute v. Cone*, 2022 WL 17228794 (1st Cir. 2022) ("The appellant has waived his right to challenge the district court's dismissal . . . because he has failed to address the bases for those rulings in his opening brief."); *Colon v. Tracey*, 717 F.3d 43, 50 (1st Cir. 2013) ("By failing to address the first ground for summary judgment in her brief, Colon has waived any challenge she may have had.").

The District Court granted summary judgment because there is no evidence of causation. (A. 1520-23). Specifically, the District Court found that the sequence of events precludes Plaintiff from establishing any causal connection between his purported protected activity and the termination decision. (A. 1521-22, 1524-25). For example, the District Court recognized that: "National Grid informed Harris it would consider him to have abandoned his job if he did not return to the service area *prior* to his reasonable accommodation inquiry or request for leave under the FMLA." (A. 1522) (emphasis supplied). Similarly, the District Court's Order cites numerous authorities emphasizing that they found a lack of causation where the employer set the wheels of termination in motion before the employee engaged in any protected activity. (A. 1521, 1524).

Plaintiff's opening brief, however, ignores the evidence establishing the sequence of events, ignores the District Court's cited authorities, and ignores the basis of the District Court's decision. Accordingly, Plaintiff has waived his right to challenge that decision. *Stoute*, 2022 WL 17228794 at 1; *Colon*, 717 F.3d at 50.

17

B.    The sequence of events defeats causation.

Even if Plaintiff had not waived the issue, the evidence shows that Plaintiff failed to establish the causation element of his *prima facie* case. Indeed, the evidence instead shows that National Grid cannot have been motivated to discharge Plaintiff by his request for an accommodation.

As a matter of law and logic, an employer cannot have been motivated by information it did not have. *See McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352, 356 (1995); *Pearson v. Mass. Bay Transp. Auth.*, 723 F.3d 36, 42 (1st Cir. 2013) ("Causation moves forward, not backwards."); *Stewart v. Ind. Sch. Dist. No. 196*, 481 F.3d 1034, 1044 (8th Cir. 2007) ("a prior event cannot be caused by a later event."); *Soileau v. Guilford of Maine, Inc.*, 105 F.3d 12, 16-17 (1st Cir. 1997) (employer could not have been motivated by as yet unmade accommodation request).

The "first time" Plaintiff told National Grid that he had pre-existing conditions for which he wanted an accommodation occurred *after and in response to* Dunn's July 30, 2020 communication explaining to Plaintiff National Grid's decision that his employment would be terminated unless he returned to work in Massachusetts that day. (A. 1400). Thus, National Grid's decision could not have been motivated by Plaintiff's

18

purported protected activity because, at the time of the decision, Plaintiff had not told National Grid that he was requesting an accommodation for an alleged disability. *See Jones v. Nationwide Life Ins. Co.*, 696 F.3d 78, 89-90 (1st Cir. 2012) (a protected request for accommodation requires notification of the condition requiring accommodation and the connection between them). In short, there is no causal connection between any protected activity and the adverse action because the decision to take the adverse action occurred before the protected activity. *See Clark v. Chapman*, 2022 WL 19833097 *4 (6th Cir. 2022) (no causation where recommendation for termination preceded protected activity); *Miceli v. Jetblue Airways Corp.*, 914 F.3d 73, 85 (1st Cir. 2019) (no causation when "problems with an employee predate any knowledge that the employee has engaged in protected activity"); *Germanowski v. Harris*, 854 F.3d 68, 74 (1st Cir. 2017) (no causation where "the decision to fire her was already in the works"); *Pearson*, 723 F.3d at 42 (no causation where recommendation for termination preceded protected activity); *Leitgen v. Franciscan Skemp Healthcare, Inc.*, 630 F.3d 668, 676 (7th Cir. 2011) (no causation where supervisors were discussing ways to discipline plaintiff before any protected activity); *Carrington v. City of Des Moines*, 481 F.3d

19

1046, 1051 (8th Cir. 2007) (no causation where investigation that led to termination began before plaintiff engaged in protected activity because "evidence of an employer's concerns about an employee's performance before the employee's protected activity undercuts a finding of causation"); *Soileau*, 105 F.3d at 16-17 (no causation where, prior to any protected activity, plaintiff was warned he would be discharged if he did not submit a performance plan).

C.    Plaintiff's arguments are misplaced.

Plaintiff makes a litany of arguments. None of them has merit.

First, Plaintiff incorrectly accuses the District Court of misapplying the law of causation by requiring Plaintiff to establish that protected activity was the sole cause of his termination. (P. Br. 6-7). The District Court accurately stated the requirement of "but-for" causation: "In other words, the plaintiff must demonstrate that the employer would not have taken the adverse action but for the desire to retaliate." (A. 1520). Regardless, Plaintiff failed to show that his purported protected activity had *any* causal connection to his termination, and the District Court found exactly that: "he cannot demonstrate a causal connection between

20

his request for a reasonable accommodation and his termination." (A. 1521). Thus, arguments about the standard of causation are inapposite.

Second, Plaintiff asserts the District Court misconstrued his claim as asserting he was terminated solely due to his accommodation request. (P. Br. 7-8). That is obviously not accurate as the District Court understood Plaintiff had asserted multiple distinct causes of his termination (including several not appealed). Furthermore, the argument is again beside the point because the evidence showed, and the District Court held, that Plaintiff failed to establish any causal connection.

Third, Plaintiff engages in a classic straw man with his extensive discussion of whether he engaged in protected activity. (P. Br. 10-25). National Grid did not challenge this element of Plaintiff's *prima facie* retaliation case in its summary judgment briefing, and the element was not the basis of the District Court's summary judgment. The issue is that Plaintiff did not engage in his purported protected activity—a request for remote work based on alleged pre-existing medical issues—until after National Grid had determined the consequences of his prior conduct.

Until then, all National Grid knew was that an employee, on record as having no disability, was concerned about COVID.[4]

Fourth, Plaintiff makes a causation argument based on the short "gap" between his protected activity and his termination. (P. Br. 35-39). True enough, there was a short gap between Plaintiff's July 30, 2020 email —the first time he disclosed still-unspecified "pre-existing conditions that I believe puts me at a higher risk for COVID" and requested an accommodation for them—and his ultimate termination. (A. 315, 1400).

But the ultimate date that termination is implemented is irrelevant when, as here, National Grid decided (and informed Plaintiff)—before his protected activity—that the consequence of his misconduct would be termination of employment. *See Clark*, 2022 WL 19833097 at \*4; *Miceli,* 914 F.3d at 85; *Germanowski*, 854 F.3d at 74; *Pearson*, 723 F.3d at 42; *Leitgen*, 630 F.3d at 676; *Carrington*, 481 F.3d at 1051; *Soileau*, 105 F.3d

---

[4] Plaintiff explains in his brief that he was a long-time smoker with throat, lung and breathing issues. (P. Br. 21, n.4). Plaintiff did not, however, communicate to National Grid that he had any "pre-existing conditions," much less any conditions related to COVID, much less again any such conditions requiring a remote-work accommodation, until after he was informed of the consequences of his conduct.

22

at 16-17. Moreover, the reason for the delay was National Grid's patience while Plaintiff sought the documentation required to support his accommodation request—documentation that Plaintiff never provided. When Plaintiff failed to submit the documentation as requested by August 18, 2020, he was notified the next day his employment had been terminated. (A. 128-29, 382-83, 395-96).

Fifth, Plaintiff suggests that his prior record of satisfactory performance somehow addresses his *prima facie* case. (P. Br. 37-38). Even if the evidence had not shown that National Grid managers had prior concerns about Plaintiff's conduct, Plaintiff ignores that the key problem with his *prima face* case is the absence of *causation* evidence.

Sixth, Plaintiff's suggestion that the termination meeting between Irani-Famili and Dunn included reference to Plaintiff's protected activity misses a key point. (P. Br. 41). Although there may have been a later meeting deciding when to implement the termination decision (after National Grid gave Plaintiff the opportunity to support his post-decision request for accommodation), the key decision about the consequences of Plaintiff's conduct was made and communicated to Plaintiff (in Dunn's July 30 letter) before his protected activity. The purported protected

23

activity—Plaintiff's request for an accommodation of his pre-existing conditions with remote work—occurred only in response to National Grid's earlier communication about the consequences of his conduct. *See Soileau*, 105 F.3d at 16-17 (no causation when employer warned employee about the need to improve and submit an improvement plan, the employee then requested an accommodation, and then the employer carried out its warning after the employee failed to do as instructed).

Seventh, Plaintiff makes much of National Grid's alleged hostility toward him after being told about the consequences of his July 2020 conduct. (P. Br. 41-45). The issue, however, only further undermines Plaintiff's case. Indeed, Plaintiff is on-record as having accused National Grid of hostility occurring in 2019 and early 2020, including being "singled out and targeted." (A. 72, 118-19, 199-200, 202). Evidence of hostility from managers that pre-dates the protected activity undercuts any claim that the protected activity caused the decision to terminate. *See Clark*, 2022 WL 19833097 at *4; *Miceli,* 914 F.3d at 85; *Pearson,* 723 F.3d at 42; *Leitgen,* 630 F.3d at 676; *Carrington,* 481 F.3d at 1051; *Soileau*, 105 F.3d at 16-17.

Eighth, Plaintiff claims National Grid terminated him knowing he was willing to work if his request for accommodation was denied. (P. Br. 45-47). Plaintiff misses the point. Most obviously, even if true, that would not show a causal connection between the purported protected activity and the prior decision that the consequence of his misconduct would be termination. In any event, Plaintiff's statement that he would drive (from California immediately) does not address his failure to return to return to work as scheduled. Similarly, Plaintiff's statements that he *tried* to get the required medical documentation only emphasize that National Grid (1) allowed him that opportunity despite its prior deadline for termination and that (2) Plaintiff did not ever provide the documentation, much less within the timeframe provided.

Ninth, Plaintiff pretends the issue underlying his termination was his failure to provide timely medical documentation. (P. Br. 46-48). In fact, Plaintiff was terminated pursuant to National Grid's July 30, 2020 communication, which described his violations of company policy and the terms of his employment. National Grid delayed implementation of the decision based on Plaintiff's request for an accommodation, but then

25

implemented it after Plaintiff failed to provide the required medical documentation to support his request.

Tenth, Plaintiff's claim of hostility regarding his August 6, 2020 FMLA request is inapposite. (P. Br. 48). Again, the decision of termination as a consequence of his failure to return was made before the purported protected activity, and thus cannot have been motivated by it.

Eleven, Plaintiff's attempts to show pretext are irrelevant and misplaced. Because Plaintiff cannot establish his *prima facie* case, the case never proceeds to the pretext stage. Even if it did, Plaintiff fails to provide any evidence of pretext.

Plaintiff primarily suggests there is an inconsistency in National Grid's explanation for Plaintiff's termination. (P. Br. 50-51). Irani-Famili, the Vice President of Plaintiff's organization, made the ultimate decision to terminate Plaintiff's employment, with input from Dunn. (A. 58-59, 717, 995). Irani-Famili accurately explained that she reached her conclusion based on Plaintiff's July 2020 conduct, which she saw as part of a larger pattern of misconduct including his disrespect for managers and lack of accountability for expenses. (A. 56-58). Irani-Famili also explained that Dunn's role in the termination decision was to provide

26

input such as ensuring the right procedures are followed. (A. 717-18). The fact that Dunn agreed with Irani-Famili's decision, but limited her own reasons to the July 2020 conduct itself, does not show any inconsistency in the reason for the decision. Indeed, even if Dunn had made the decision, the fact that Irani-Famili's explanation included additional context does not create an inconsistency that might constitute pretext evidence. *See Rodgers v. U.S. Bank, N.A.*, 417 F.3d 845, 855 (8th Cir. 2005) (elaboration about the reasons for a decision is not a change in the reasons, and thus is not evidence of pretext).

Furthermore, the entire issue only underlines the evidence of National Grid's concerns about Plaintiff before his July 2020 purported protected activity, and Plaintiff's own admitted belief that he had been targeted by National Grid based on events occurring well before July 2020.

Twelve, although Plaintiff may have shown that Dunn was mistaken about whether he had storm duties, he has failed to explain how that shows he was retaliated against. (P. Br. 51).

Thirteen, Plaintiff's additional claims that the District Court improperly analyzed the case also lack merit. (P. Br. 52-53). For example,

the District Court's discussion of Plaintiff's background problems at National Grid are particularly irrelevant in that the basis of the decision was the timing of the decision *vis-à-vis* the protected activity. (A. 1522). In any event, the District Court's reference to Plaintiff's earlier problems with management makes sense in light of the fact Irani-Famili put Plaintiff's July 2020 conduct in that context. Moreover, Plaintiff himself has asserted that he was "singled out and targeted" and "retaliated" against regarding the issues with his expenses dating from as far back as 2019. (A. 72, 118-19).

Fourteen, Plaintiff's argument about "the threat to terminate Plaintiff and the "later . . . request for reasonable accommodation" only supports summary judgment. (P. Br. 54). It is precisely because the "threat to terminate" preceded the "request for reasonable accommodation" that the adverse action cannot have been caused by the request.

Fifteen, Plaintiff's quibbles about whether his performance evaluation was "negative" or "good" and whether there was a written policy requiring on-site work are beside the point. (P. Br. 54-55). Not only is there no requirement that a policy be in writing, the entire issue is a

28

red-herring. The District Court entered summary judgment because there is no evidence of causation, not because of Plaintiff's performance review or whether there was a written policy about working on-site.

Sixteen, Plaintiff's suggestion that National Grid could or should have handled Plaintiff's request differently is beside the point.

The point is that Plaintiff only engaged in his purported protected activity after National Grid decided the consequences of his conduct. Accordingly, Plaintiff cannot establish causation between the protected activity and the adverse action, and the District Court thus correctly entered summary judgment.

## II.    The FMLA retaliation claim.

Summary judgment regarding the FMLA retaliation claim should also be affirmed. First, Plaintiff has waived his right to challenge summary judgment by failing to address the District Court's grounds for its decision—*i.e.*, how the sequence of events precludes him from showing causation. Second, even absent waiver, Plaintiff's claim fails because he has no evidence demonstrating any causal connection between his

29

purported protected activity—his FMLA leave request—and his employment termination.

### A.    Plaintiff has waived right to challenge summary judgment.

An appellant who fails to address the grounds of the district court's decision waives the right to challenge that decision. *Stoute*, 2022 WL 17228794; *Colon*, 717 F.3d at 50.

The District Court granted summary judgment because there is no evidence of causation. (A. 1520-23). Specifically, the District Court found that the sequence of events precludes Plaintiff from establishing any causal connection between his request for FMLA leave and the termination decision. (A. 1521-22, 1524-25). For example, the District Court recognized that: "National Grid informed Harris it would consider him to have abandoned his job if he did not return to the service area *prior* to his reasonable accommodation inquiry or request for leave under the FMLA." (A. 1522) (emphasis supplied). Similarly, the District Court's Order cites numerous authorities emphasizing that they found a lack of causation where the employer set the wheels of termination in motion before the employee engaged in any protected activity. (A. 1521, 1524).

Plaintiff's opening brief, however, ignores the evidence establishing the sequence of events for his FMLA retaliation claim, ignores most of the District Court's cited authorities, and ignores the basis of the District Court's decision. Accordingly, Plaintiff has waived his right to challenge that decision. *Stoute*, 2022 WL 17228794 at 1; *Colon*, 717 F.3d at 50.

B.    The sequence of events defeats causation.

Even if Plaintiff had not waived the issue, the evidence shows that Plaintiff failed to establish the causation element of his *prima facie* case. Indeed, the evidence instead shows that National Grid could not have been motivated to discharge Plaintiff by his request for FMLA leave.

As a matter of law and logic, an employer cannot have been motivated by information it did not have. *See McKennon*, 513 U.S. at 356; *Pearson*, 723 F.3d at 42; *Stewart*, 481 F.3d at 1044; *Soileau*, 105 F.3d at 16-17.

On July 30, 2020, Dunn communicated to Plaintiff that he would be terminated unless he returned to work in Massachusetts that day. (A. 1400). Plaintiff did not mention FMLA leave until August 6, 2020. Thus, National Grid's decision could not have been motivated by Plaintiff's purported protected activity. In short, there is no causal connection

31

between any protected activity and the adverse action because the decision to take the adverse action occurred before the protected activity. *See Clark*, 2022 WL 19833097 at *4; *Miceli,* 914 F.3d at 85; *Germanowski*, 854 F.3d at 74; *Pearson,* 723 F.3d at 42; *Leitgen*, 630 F.3d at 676; *Carrington*, 481 F.3d at 1051; *Soileau*, 105 F.3d at 16-17. Although it is not the date of implementation that is determinative, Plaintiff's inability to show causation is only reinforced by the fact National Grid understood at the time the termination decision was implemented that he had withdrawn the only FMLA request he filed. *Id.* (A. 84, 146-47, 323, 342, 359, 362).

C.    Plaintiff's arguments are misplaced.

Plaintiff refers in his brief to prior arguments without repeating them, and National Grid thus will not repeat its responses debunking Plaintiff's claims of retaliation and pretext.

32

## CONCLUSION

The District Court's summary judgment order should be affirmed.

Dated: August 15, 2025

Respectfully Submitted,

/s/ Lisa Stephanian Burton

Lisa Stephanian Burton, Esq.
Laurielle M. Howe, Esq.
Ogletree, Deakins, Nash
Smoak & Stewart, P.C.
One Boston Place, Suite 3500
Boston, MA 02108
mark.burak@ogletreedeakins.com
laurielle.howe@ogletreedeakins.com

*Attorneys for Defendant-Appellee*

## CERTIFICATE OF COMPLIANCE

1.  This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 5,747 words.

2.  This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 MSO Version 2502 in 14 point Century Schoolbook font.

s/ *Lisa Stephanian Burton*
An Attorney for Appellee

## CERTIFICATE OF SERVICE

I hereby certify that on August 15, 2025, a copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ *Lisa Stephanian Burton*
An Attorney for Appellee
